UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00836-GNS

DIVERSICARE HIGHLAND, LLC
d/b/a Highlands Health & Rehabilitation Center;
DIVERSICARE HEALTHCARE SERVICES, INC.;
DIVERSICARE MANAGEMENT SERVICES CO.;
DIVERSICARE LEASING CORP.; and
ADVOCAT FINANCE, INC.                                    PLAINTIFFS


V.


LINDA LEE
As Executrix of Estate of Edward Lee                     DEFENDANT



**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 5) and Plaintiffs'

Motion to Compel Arbitration (DN 7).  The motions have been fully briefed by the parties and

are ripe for adjudication.  For the reasons outlined below, the motions are **GRANTED IN PART**

and **DENIED IN PART**.

I.        **SUMMARY OF FACTS AND CLAIMS**

On October 30, 2010, Edward E. Lee ("Decedent") executed a generable durable power

of attorney instrument ("POA").  (Power of Attorney, DN 13-1).  Under the terms of the POA

Decedent designated his wife, Linda Lee ("Lee"), as his attorney-in-fact.  (Power of Attorney 1).

In relevant part, the POA granted to Lee the following powers:

    5.        To commence and prosecute in my behalf, any suits or actions or
    other legal or equitable proceedings for the recovery of any lands or for any
    goods, chattels, debts, duties, demands, causes or things whatsoever, due or to

become due or belonging to me, and to prosecute, maintain, and discontinue the same, if they shall deem proper;

6.     To take all steps and remedies necessary and proper for the conduct and management of my business affairs, and for the recovery, receiving, obtaining and holding possession of any lands, interest, demands, duties, sum of money, or any other thing whatsoever, located anywhere, that is, are, or shall be, by my said Attorney in Fact, thought to be due, owing, belonging to or payable to me in my own right or otherwise;

7.     To appear, answer and defend in all actions and suits whatsoever which shall be commenced against me and also for me and in my name to compromise, settle, and adjust with each and every person or persons, all actions, accounts, dues, and demands, subsisting or subsist between me and them or any of them, and in such manner as my said Attorney in Fact shall think proper; hereby giving to my said Attorney power and authority to do, execute and perform and finish for me and in my name all those things which shall be expedient and necessary, for which my said Attorney shall judge expedient and necessary, in and about or concerning the premises, or any of them, as fully as I, the said Edward E. Lee, could do if personally present, hereby ratifying and confirming or concerning the premises and any part thereof . . . .

(Power of Attorney 2).

On July 17, 2012, Decedent was admitted to Highlands Health and Rehabilitation Center ("Highlands").[1]   (Compl. ¶ 3, DN 1-4).   At the time of admission, Lee executed the Admissions/Financial Agreement as her husband's attorney-in-fact.   (Admission/Financial Agreement, DN 1-1).   That agreement provided that the parties would submit any dispute to "mandatory, non-binding arbitration" under the rules of the American Arbitration Association and that judgment could be entered on any arbitration award.   (Admissions/Financial Agreement 5-6, DN 1-1).

Several months later, on October 4, 2012, Decedent's attorney-in-fact executed a second set of admissions documents due to a change in ownership of the facility.   The second set of documents included a document entitled "Addendum to Admission Agreement" that contained

---

[1] The Court will refer to Plaintiffs in this action collectively as "Diversicare."

2

an arbitration provision requiring Decedent to arbitrate any claims she had against Diversicare. (Addendum to Admission Agreement 1-2, DN 1-3).

Decedent resided at Highlands for the period of time from July 18, 2012, to November 20, 2014, exclusive of hospitalizations. (Compl. ¶ 3). On or about September 29, 2015, Lee, as Executrix of the Estate of Edward Lee ("Estate"), filed a lawsuit in Jefferson Circuit Court entitled *Lee v. Diversicare Highlands, LLC*, Civil Action No. 15-CI-004990 (the "State Court Action"). In the state court complaint, Lee asserted claims of negligence, medical negligence, corporate negligence, and wrongful death.[2] (Compl. ¶¶ 25-73). Following the initiation of the State Court Action, Diversicare filed this action in federal court asserting jurisdiction under 28 U.S.C. § 1332(a) and Section 4 (9 U.S.C. § 4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, seeking to enforce the arbitration agreement executed by Lee. (Pet. to Compel Arbitration ¶¶ 8-11, 29-32, DN 1).

## II.   DISCUSSION

In support of her motion to dismiss, Lee asserts various bases pursuant to Federal Rules of Civil Procedure 12(b)(1), 19, and 12(b)(6). Lee raises the following arguments: (i) the Court lacks subject matter jurisdiction; (ii) Diversicare failed to join indispensable parties—namely nursing home personnel who are defendants in the State Court Action—as parties to this action; (iii) the Court should abstain from exercising jurisdiction based upon the *Colorado River* abstention doctrine; (iv) the arbitration provisions are invalid and unenforceable; and (v) the arbitration provisions are unconscionable. (Def.'s Mem. in Supp. of Mot. to Dismiss 2-25, DN 5-1). These same arguments have been unsuccessfully raised in other recent cases in this District involving arbitration agreements with nursing homes. *See Owensboro Health Facilities, L.P. v.*

---

[2] The Estate also asserted claims against various individuals who are not parties to this federal action. (Compl. ¶¶ 10-11, 51-56).

3

*Henderson*, No. 4:16CV-00002-JHM, 2016 WL 2853569 (W.D. Ky. May 12, 2016); *Riney v. GGNSC Louisville St. Matthews, LLC*, No. 3:16CV-00122-JHM, 2016 WL 2853568 (W.D. Ky. May 12, 2016); *Preferred Care of Del., Inc. v. Crocker*, No. 5:15-CV-177-TBR, 2016 WL 1181786 (W.D. Ky. Mar. 24, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-CV-902-DJH, 2016 WL 815295 (W.D. Ky. Feb. 29, 2016); *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR, 2014 WL 790916 (W.D. Ky. Feb. 26, 2014); *Life Care Ctrs. of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 5439623 (W.D. Ky. Oct. 22, 2014). *See also GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149 (E.D. Ky. Mar. 31, 2015).  After considering the arguments of the parties and the cases referenced above with respect to the issues of subject matter jurisdiction, indispensable parties, and abstention, the Court denies the motion to dismiss for the reasons set forth in and *Crocker*, *Watkins*, and *Dowdy*. Inasmuch as the circumstances and specific language of the POA here differs from those cases, the Court specifically addresses the validity, unconscionability, and enforceability of the POA below.

A.      **Personal Injury & Statutory Claims**

Whether the arbitration provision is enforceable first depends upon the authority of a decedent's attorney-in-fact to bind any claims that he or his estate may have against Diversicare. In *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the Kentucky Supreme Court noted:

> The scope of that authority [granted to the attorney-in-fact] is thus left to the principal to declare, and generally that declaration must be express. . . . [E]ven a "comprehensive" durable power would not be understood as implicitly authorizing all the decisions a guardian might make on behalf of a ward.  Rather, we have indicated that an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the "utmost good faith."

4

*Ping*, 376 S.W.3d at 592 (citation omitted).  The court further recognized the general rule that "[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be inferred lightly."  *Id.* at 593.

More recently, in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2016), the Kentucky Supreme Court addressed whether the execution of an arbitration agreement by an attorney-in-fact on behalf of a nursing home resident was binding upon the resident's estate and statutory wrongful death beneficiaries.  *See id.* at 312.  In that case, the court considered three different power-of-attorney instruments and held that only one of the three contained language broad enough to empower the attorney-in-fact to execute an arbitration agreement.  *See id.*  With regard to all three instruments, however, the Kentucky Supreme Court held that there was a lack of "a clear and convincing manifestation of the principal's intention" to waive the personal right to a trial by jury, which rendered the arbitration agreement unenforceable.  *See id.  See also id.* at 328-29.  For those reasons, the court held that the power-of-attorney instruments did not authorize the attorneys-in-fact to sign arbitration agreements and to waive the grantors' right to a jury trial.  *See id.* at 330.

Subsequently, in *Preferred Care of Delaware, Inc. v. Crocker*, this Court addressed, *inter alia*, whether the *Whisman* decision violated the FAA in light of the U.S. Supreme Court's decision in *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  *See Crocker*, 2016 WL 1181786, at *5-11.  As the Supreme Court has noted:

> The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," and to place such agreements "'upon the same footing as other contracts.'"  While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements

5

into which parties had entered."  . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal citations omitted) (citation omitted).  The FAA preempts state law in two situations: "[w]hen a state law prohibits outright the arbitration of a particular type of claim" and "when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Concepcion*, 563 U.S. at 341 (citations omitted).

In applying *Concepcion*, this Court in *Crocker* was persuaded by the dissent of Justice Abramson (now Hughes) in *Whisman*.  In her opinion, Justice Hughes stated:

> Unlike the majority's examples, all of which suppose the waiver or compromise of a basic, personal substantive right (rights that an ordinary attorney-in-fact is rarely, if ever, asked to address on the principal's behalf), arbitration agreements, which are commonplace these days, involve no substantive waiver.  The principal's substantive rights remain intact, only the forum for addressing those rights is affected.  The majority's apparent presumption that the arbitration agreement has substantive implications adverse to the principal (and thus belongs on the list of hard-to-waive substantive rights) is the very presumption Congress sought to counteract with the FAA.
>
> Thus, while it may well be possible to frame a rule under state law to the effect that a presumption exists against an agent's authority to waive certain substantive rights of the principal, it does not follow that state law would include the right to civil trial among those presumptively non-waivable rights; and even if, as the majority would have it, the state rule did purport to hold sacrosanct the principal's right to trial in civil cases, under *Concepcion* and the FAA, the saving clause of which is not to be construed as a self-destruct mechanism, that aspect of the state rule would be preempted by federal law.

*Id.* at *11 (quoting *Whisman*, 478 S.W.3d at 353-54 (Abramson, J., dissenting)).  Applying *Concepcion* in *Crocker*, this Court reasoned:

> This Court agrees with Justice Abramson's analysis of the juxtaposition between the majority's examples and an agent's execution of a pre-dispute arbitration agreement as well as with her ultimate conclusion, which is in accordance with

the United States Supreme Court's precedent, that "what state law cannot do directly—disfavor arbitration—it also cannot do indirectly by favoring arbitration's correlative opposite, a judicial trial." As that is the "express purpose of the rule" created by the majority decision of the Kentucky Supreme Court and "the application of that rule will clearly have a disproportionate effect on the ability of agents to enter arbitration agreements (as opposed to other contracts)," the rule violates the FAA.

Though the second inquiry under *Concepcion* is "more complex," this Court believes that the Kentucky Supreme Court's decision in *Whisman* fails the second inquiry and, therefore, is invalid. The rule established by Kentucky's highest court conflicts with the goals and policies of the FAA, as they are "antithetical to threshold limitations placed specifically and solely on arbitration." The Kentucky Supreme Court's requirement that a principal in his power of attorney explicitly convey to an attorney-in-fact the right to enter into a pre-dispute arbitration agreement "places arbitration agreements in a class apart from 'any contract,' and singularly limits their validity." Consequently, the court's rule is "inconsonant with, and is therefore preempted by, the federal law."

*Id.* at \*10-11 (internal citations omitted) (citation omitted). Accordingly, this Court held that *Whisman* failed to pass muster under either analysis.

In the present case, the Court reaches the same conclusion.[3] Applying *Whisman* to the facts of this case to invalidate the arbitration agreements signed by Decedent's wife would run afoul of the FAA. Although the Kentucky Supreme Court's antipathy for arbitration was more subtly expressed in *Ping*, its true colors were revealed fully in *Whisman*. Based upon the reasoning of *Crocker*, the rule expressed in *Whisman* contravenes the FAA and the Court will therefore deny the motion to dismiss and grant the motion to compel arbitration with respect to the Estate's claims.

---

[3]During the evidentiary hearing held in this matter, the parties addressed the applicability of the Sixth Circuit's decision in *Pine Tree Villa v. Brooker*, 612 F. App'x 340 (6th Cir. 2015). *Brooker* followed the decision in *Ping* and noted the Kentucky Supreme Court's "cautious approach to POAs" that limits the enforceability of the POAs in the context of arbitration agreements. *Id.* at 344. In *Brooker*, however, it appears that the parties did not raise and the Sixth Circuit did not address whether *Ping* violated *Concepcion*.

B.      **Unconscionability**

Defendant also seeks dismissal of this action on the basis that the arbitration provision is unconscionable.  (Def.'s Mem. in Supp. of Mot. to Dismiss 24-25).  Under Kentucky law, "[t]he doctrine of unconscionability is recognized as a narrow exception to Kentucky's fundamental rule of enforcing validly executing contracts according to their terms."  *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (citation omitted).  To determine whether this doctrine precludes enforceability of the arbitration provision, the Court must conduct "a two step process—first, a review focused on the procedures surrounding the making of the arbitration clause (procedural unconscionability) and second, a review of the substantive content of the arbitration clause (substantive unconscionability)."  *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (citation omitted).

> With regard to procedural unconscionability, this Court has noted:
>
> Procedural unconscionability, also known as unfair surprise . . . pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.  The Supreme Court of Kentucky recently held that an arbitration clause was not procedurally unconscionable where:  the clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way"

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted).  Defendant maintains that the agreements were boilerplate and executed as part of the numerous documents signed during the admissions process renders that arbitration provisions procedurally unconscionable.  (Def.'s Mem. in Supp. of Mot. to Dismiss 24-25).  The Court rejects these arguments.  "That the ADR Agreement is a 'boiler-plate, pre-printed' document does not render it unconscionable."  *Warner*, 2013 WL 6796421, at *9.  A lengthy

8

admissions process with numerous forms to execute does not arise to the level of unconscionability.[4]  *See Watkins*, 2016 WL 815295, at *6 ("[M]any situations—such as buying a house or a car, visiting the doctor, or starting a new job—involve a lengthy process in which an individual must complete a substantial amount of paperwork.  This alone does not make a contract procedurally unconscionable.").

Likewise, the arbitration provision is not precluded by substantive unconscionability.  As this Court has explained:

> Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. As for substantive unconscionability, courts consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.

*Davis*, 765 F. Supp. 2d at 941 (internal quotation marks omitted) (internal citation omitted) (citation omitted).  Defendant maintains that the provisions were substantively unconscionable because of the gross disparity in bargaining power and the fact that the costs of arbitration were not disclosed.  (Def.'s Mem. in Supp. of Mot. to Dismiss 25).  These arguments also lack merit. A difference in bargaining power alone does not amount to unconscionability.  *See Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001).   From the agreements themselves, the arbitration provisions are not substantively unconscionable because:  (i) the provisions are plainly stated; (ii) the implications are in bold type (including a notation that "**[t]his Arbitration Agreement [] governs important legal rights.  Please read it carefully and fully before signing it.**"); (iii) the provisions are reciprocal and do not limit recovery by either party; and (iv) the Addendum to the Admission Agreement granted Defendant the right to opt out of the arbitration provision within thirty days of execution of the agreements.

---

[4]  Defendant's argument is also undermined by the fact that the Addendum to Admission Agreement was executed several months after Decedent's admission.

(Admissions/Financial Agreement 5-6; Addendum to Admission Agreement 1-5). While it is true that the fees associated with the arbitration are not disclosed, Diversicare contractually agreed to pay the initial administrative fees to initiate arbitration and to pay two-thirds of any additional administrative fees and costs. (Addendum to Admission Agreement 3). There is nothing in the record to otherwise support Defendant's naked assertion that arbitration fees are necessarily higher than litigating this dispute in court. Under these circumstances, the Court finds that there is no substantive unconscionability.

For these reasons, the doctrine of unconscionability does not preclude the enforcement of the arbitration provisions in this case. The motion to dismiss on this basis will be denied.

### C.   <u>Wrongful Death Claim</u>

A different outcome, however, obtains with respect to arbitration of the wrongful death claims. Under KRS 411.130, a wrongful death claim may be pursued by the decedent's personal representative, and state law specifies the beneficiaries of such claims. *See* KRS 411.130. *See also* KRS 411.140 (providing that a wrongful death claim survives the decedent's death and may be brought by the personal representative). Thus, under Kentucky law, the personal representative of the decedent has the legal duty to bring a wrongful death action even though the personal representative may not be a beneficiary entitled to recover for the decedent's death. *See Vaughn's Adm'r v. Louisville N.R. Co.*, 179 S.W.2d 441, 444 (Ky. 1944).

In *Pete v. Anderson*, 413 S.W.3d 291 (Ky. 2013), the Kentucky Supreme Court reiterated the premise that wrongful death claims belong to the statutory heirs of the decedent as opposed to the decedent's estate, explaining:

> [T]his Court's recent decision in *Ping* . . . puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping,* the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging

negligence resulting in injuries causing the woman's death.  Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140.  We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss."  Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate.

*Id.* at 300 (citations omitted) (footnote omitted).  *Pete* did not deal with any arbitration issues and thus cannot be construed to disfavor arbitration in violation of *Concepcion*.  *See also Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (1967) ("KRS 411.130 creates a cause of action for wrongful death.  This is a statutory right of action which did not exist prior to the wrongful death but arises by reason thereof.  It has been pointed out that the wrongful death action is not derivative.  It is brought to compensate survivors for loss occasioned by the death and not to recover for injuries to the decedent.  The cause is distinct from any that the deceased may have had if he had survived.  The damage caused by the wrongful death begins with, and flows from, the death.").  Instead, *Pete* clarifies that under Kentucky law wrongful death claims belong to the statutory beneficiaries, not to the decedent's estate.

Recently, in *Richmond Health Facilities-Kenwood, LP v. Nichols*, 811 F.3d 192 (6th Cir. 2016), the Sixth Circuit addressed whether a decedent could contractually bind his heirs to arbitrate claims for his wrongful death.  *See id.* at 193-94.  The court noted that the wrongful death beneficiary was not a party to the arbitration agreement and held that wrongful death claims were not required to be arbitrated based upon *Ping* and its progeny.  *See id.* at 197.  The Sixth Circuit also analyzed whether *Ping* violated *Concepcion* and concluded that *Ping* was not preempted by the FAA because *Ping* did not disfavor arbitration agreements, but held that only

the wrongful death beneficiaries had the right to limit any rights related to those claims.  *See id.*

at 197-201.  In particular, the Sixth Circuit noted:

> Wrongful-death beneficiaries are thus no more or less bound by a decedent's agreement to arbitrate than they are by a decedent's waiver of certain claims, selection of a forum to litigate disputes, or selection of the law governing an agreement.  To illustrate, suppose that a decedent and the long-term facility enter into an agreement in which the parties select a Kentucky state court as the forum to litigate the wrongful-death claim.  Under *Ping*, the wrongful-death beneficiary is not bound by this forum-selection clause because the decedent never had an interest in the claim itself.  And because the beneficiary is not bound by the clause, the beneficiary could very well elect to arbitrate the wrongful-death claim instead—so long as the long-term facility agrees.  *Ping* is thus indifferent to arbitration.

*Id.* at 199.

In this case, the Court concludes that Decedent's attorney-in-fact did not have the authority to waive any rights of the wrongful death beneficiaries under Kentucky law because those claims did not belong to the Decedent.  *See id.*; *Pete*, 413 S.W.3d at 300.  Accordingly, Plaintiffs are not entitled to compel arbitration regarding the wrongful death claim because Decedent could not grant his attorney-in-fact powers beyond his control, such as the right to constrain the claims of his wrongful death beneficiaries.  For this reason, the Court will grant the motion to dismiss and deny the motion to compel arbitration with respect to the wrongful death claim only.

## III.   CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** as follows:

1.     Defendant's Motion to Dismiss (DN 5) is **GRANTED IN PART** as to the wrongful death claim only and **DENIED IN PART** as to all other claims.

2.     Plaintiffs' Motion to Compel Arbitration (DN 7) is **GRANTED IN PART** and **DENIED IN PART**.  Defendant is **ENJOINED** from proceeding against Plaintiffs in the State

Court Action, except for the wrongful death claims.   The parties to this action are **COMPELLED** to arbitrate all claims (except the wrongful death claims) pursuant to the terms of the Admissions/Financial Agreement (DN 1-1) and Addendum to Admission Agreement (DN 1-3), which are the subject of the State Court Action.   Counsel **SHALL** promptly notify the Jefferson Circuit Court of this Memorandum Opinion and Order.

   3.  This case is **STAYED** until the conclusion of the ordered arbitration.

            **Greg N. Stivers, Judge**
           **United States District Court**
             June 21, 2016

cc:  counsel of record

13